# In the United States Court of Federal Claims

No. 22-424

(Filed: May 17, 2023)

| | |
|---|---|
| _____ ) | Military medical claim; challenges to the |
| **MARK A. OLIVE,** ) | Army's findings of fact |
| ) | |
| Plaintiff, ) | |
| ) | |
| **v.** ) | |
| ) | |
| **UNITED STATES,** ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Robert J. Conlan, Sidley Austin LLP, Washington D.C., for plaintiff.  With him on the briefs were Drew Langan and Nicholas S. Willingham, Sidley Austin LLP, Washington D.C., Emily M. Wexler, Sidley Austin LLP, Chicago, IL, and Rochelle Bobroff and Clarissa Cashmore, National Veterans Legal Services Program, Arlington, VA.

Daniel F. Roland, Trial Attorney, Civil Division, United States Department of Justice, Washington, D.C., for the United States.  With him on the briefs were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Douglas K. Mickle, Assistant Director, Civil Division, United States Department of Justice, Washington, D.C., as well as Frederick Rudesheim, Major, Judge Advocate General's Corps, Litigation Attorney, U.S. Army Legal Service Agency, Fort Belvoir, VA.

## OPINION AND ORDER

LETTOW, Senior Judge.

This case arises from the United States Army's refusal to grant plaintiff, Staff Sergeant ("SSG") Mark Olive,[1] Combat-Related Special Compensation ("CRSC") for migraine headaches as a residual of traumatic brain injury ("TBI-related migraine condition").  *See* AR 1-2, 5.[2]  At issue is whether the Army Human Resource Command's ("the Army's") remand decision denying plaintiff CRSC based on its finding that his migraine condition is not combat-related is

_____

[1] Although plaintiff is retired, the court will refer to him by his last military rank, Staff Sergeant.

[2] The administrative record is paginated consecutively and will be cited as follows: "AR __."

arbitrary, capricious, or contrary to law.[3]  First, plaintiff argues that the Army's finding that he failed to establish his injury was caused by a combat-related event is unsupported by the record. Second, he argues that by requiring that he submit medical evidence contemporaneous with his injury the Army applied the wrong standard on remand.  Finally, he contends that the Army's determination that his anxiety not otherwise specified with TBI ("anxiety with TBI condition") is combat-related[4] entails finding that his TBI-related migraine condition is also combat-related, so it erred in denying him CRSC for the latter condition.  Staff Sergeant Olive asks this court to remedy these errors by reversing the Army's decision and awarding him CRSC, retroactive to the date he became eligible, for migraines residual to TBI.  Pl.'s Mem. in Supp. of Cross-Mot. for J. on the Administrative R. & Resp. to Def.'s Mot. for J. on the Administrative R. ("Pl.'s Cross-Mot. Mem.") at 2, ECF No. 21-1; Pl.'s Reply in Supp. of Cross-Mot. ("Pl.'s Reply") at 5, ECF No. 23.

## FACTS[5]

Plaintiff enlisted in the United States Army on April 7, 1999.  Am. Compl. ¶ 18, ECF No. 13.  He was medically retired "because of physical disability," specifically two degenerative spinal disabilities, on December 25, 2012.  Am. Compl. ¶ 27.  The Army has awarded plaintiff CRSC for various conditions but has repeatedly denied compensation for his TBI-related migraine condition because he has not shown that condition is combat-related.  Am. Compl. ¶¶ 1-5, 31-36.[6]  At issue currently is the Army's most recent denial, set out in its remand decision.  *See* AR 1-3.

---

[3] On June 14, 2022, the court had granted a remand in response to defendant's motion for reconsideration of SSG Olive's disability claims.  *See* Order of June 14, 2022, ECF No. 6.

[4] An anxiety not otherwise specified, or "NOS," rating is assigned when the examiner determines a servicemember's symptoms do not meet the criteria for any particular anxiety disorder, *e.g.*, posttraumatic stress disorder or obsessive-compulsive disorder.  *See* 38 C.F.R. § 4.130.

[5] The court's findings of fact are based on the Administrative Record.  *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1357 (Fed. Cir. 2005) ("[T]he [c]ourt . . . is required to make factual findings under [what is now RCFC 52.1] from the record evidence as if it were conducting a trial on the record.").

[6] Traumatic Brain Injury is a general term that encompasses alterations in brain function, or "other evidence of brain pathology caused by an external force."  *See* Ctrs. for Disease Control & Prevention, Nat'l Insts. of Health, Dep't of Defense, and Dep't of Veterans Affs. Leadership Panel, *Report to Congress on Traumatic Brain Injury in the United States* at 1 (2013), available at https://www.cdc.gov/traumaticbraininjury/pdf/Report_to_Congress_on_Traumatic_Brain_Injury_2013-a.pdf (internal quotations omitted).  It can result from blunt (cont.)

### A.  Staff Sergeant Olive's active duty

After enlisting in the Army in April 1999, SSG Olive served three tours of duty, the first in Afghanistan and the second two in Iraq.  Am. Compl. ¶ 19.  Staff Sergeant Olive's complaint focuses primarily on incidents that occurred while he served as a truck commander during his first tour.  *See* Am. Compl. ¶¶ 20, 22.  He drove the truck and occasionally manned its gun during patrols ranging from 6- to 72-hours long.  Am. Compl. ¶ 20.  To avoid being trapped if the vehicle rolled over, servicemembers, including SSG Olive, often chose not to wear seatbelts.  AR 30.  This decision increased the likelihood of other injuries.  *See* AR 30.

Relevant here, SSG Olive's duties exposed him to blunt-force head injuries.  He avers that he was in four collisions involving other vehicles, AR 30, including one that caused him to strike his head against the windshield, cracking the glass.  Am. Compl. ¶ 22.  Plaintiff recalls that he was instructed to visit the medic following this incident but was not instructed to make a statement.  AR 30.  Staff Sergeant Olive claims to have hit his head on the dashboard, ceiling, and other parts of the truck's metal interior on other occasions.  Am. Compl. ¶ 22.

Plaintiff asserts that his duties also subjected him to blast injuries.  Throughout his Afghanistan tour, SSG Olive "regularly endured exposure to mortar attacks." AR 32.  During one such attack he claims a mortar struck "20-30 meters from where he was standing with no cover" and inflicted a "concussive-force injury."  Am. Compl. ¶ 23.  Staff Sergeant Olive recalled being "disoriented for approximately 30 seconds" and that his "ears were ringing and [his] head felt tight and numb" for a couple minutes.  AR 31.  He states his ears still "ring daily . . . sometimes multiple times per day, for 20-30 seconds each episode."  AR 31.

### B.  Staff Sergeant Olive's medical retirement

After returning from his third and final tour, SSG Olive visited the outpatient social work clinic on Schofield Barracks in Hawaii on March 3, 2011.  AR 349-53.  While he recounts experiencing "mortar attacks, small gun fire, and grenades thrown near him" during his tour, his primary complaint concerned a shoulder injury.  AR 350.  During this visit, he "denied any [history] of head injury."  AR 351.

---

trauma or "indirect acceleration and deceleration forces or blasts." *Id.*  Such an injury has outcomes ranging from "transient, reversable alterations in brain function" to irreversible changes, "profound disability[,] or death." *Id.*  Even some with mild TBI "develop post-concussion syndrome" which is "characterized by headaches, depression, irritability, sleep disorder, poor concentration, and fatigue." *Id.* at 1-2.  "Since the beginning of Operation Enduring Freedom (OEF) (Afghanistan) and Operation Iraqi Freedom (OIF), public health and health care-communities have become aware of increased rates of [TBI] among active duty [United States] military personnel." *Id.* at iv.  Indeed, "33,149 U.S. military personnel were diagnosed with a TBI in 2011 alone." *Id.* at xiv.

About six months later, on September 26, 2011, SSG Olive visited the TBI concussion clinic on base.  AR 345-48.  While the notes from this visit indicated he "screened positive on [the] m[ild ]TBI screening tool" and experienced "bi temporal headaches that last from hours to all day" and occur about five times per week, the notes also state "[n]o TBI.  [SSG Olive] meets retention standards and is deployable worldwide f[r]om a TBI perspective."  AR 347-48.  Moreover, SSG Olive stated that "none of these [symptoms] were present immediately after any of the vehicle[-]related events."  AR 347.

That December, SSG Olive attended two medical evaluations before an Army medical evaluation board.  The doctor who conducted the first exam surveyed SSG Olive's history of TBI and chronic headaches/migraines.  AR 367-68.  Staff Sergeant Olive "report[ed that] he sustained many head injury(ies) during service," including that he "continuously hit/banged his head in the vehicle," and that "the severity rating at the time of his head injury was mild."  AR 367.  Staff Sergeant Olive stated that he had "symptoms of a concussion" as a result and suffered headaches lasting four hours, three times per week.  AR 367.  In addition, SSG Olive "report[ed] mood swings . . . [and] problems with attention . . . anger management . . . [and] memory," as well as daily dizziness spells.  AR 368.  This doctor diagnosed SSG Olive with migraines "due to the service related TBI."  AR 378.  The second report largely mirrors the first, indicating that SSG Olive "[d]eveloped headaches after deployment in Afghanistan in 2004-2005, as he kept getting his head banged around in his truck" and identifying the same symptoms.  AR 339, 341-42.

Based not on SSG Olive's TBI but on his spinal conditions, the medical evaluation board referred him to the physical evaluation board.  Am. Compl. ¶ 26.  The physical evaluation board awarded SSG Olive a 30% cumulative disability rating for his spinal conditions, and he was medically retired effective December 25, 2012.  Am. Compl. ¶ 27; AR 164.

### C.  Staff Sergeant Olive's requests for CRSC

Before filing suit in this court, plaintiff requested CRSC six different times.  While his anxiety with TBI, tinnitus, and left maxillary sinusitis were ultimately verified as combat-related, the Army consistently concluded he did not establish that his TBI-related migraine condition is combat-related.  AR 7, 110, 124-25, 386.

Staff Sergeant Olive first requested CRSC on January 8, 2013.  AR 438-40.  The Army denied this request because he did not provide a Department of Veterans Affairs ("VA") waiver reducing his military pay by his VA disability payment, a formal pre-requisite to receiving CRSC.  AR 434.

Staff Sergeant Olive then sought and obtained VA disability ratings for various conditions and requested his CRSC application be reconsidered with the appropriate VA waiver.  See AR 418, 421.  The September 2013 VA rating decision found service connection for plaintiff's anxiety with TBI and assigned him a 40% disability rating.  AR 40-43.  The VA assessed his unspecified anxiety disorder at 30% disabling and his TBI at 40% disabling but evaluated them together because the symptoms co-mingle and "it is impossible to differentiate

which symptoms attribute to each diagnosis." AR 40, 43.  That decision also found his TBI-related migraine condition was service connected but deemed it non-compensable.  AR 48.

In denying the second CRSC request, the Army reasoned that plaintiff's documentation "does not show accident or incident to connect disability to a combat related event" for any of his disabilities.  AR 409.

In November 2013, before filing his third CRSC request, plaintiff asked the VA to reconsider its September 2013 rating decision.  *See* AR 219.  The VA complied and issued a second decision, finding plaintiff's migraines were 30% disabling in April 2014.  AR 220-21.

On August 7, 2014, plaintiff asked the Army to reconsider its denial of CRSC for the third time.  AR 404.  He included the VA's April 2014 rating decision and a written statement averring he incurred TBI and related injuries "in the line of duty while deployed in Afghanistan." *See* AR 395, 408.  Specifically, he stated that he sustained TBI and "[m]igraines [in] conjunction with TBI" "during combat operations" and that, at some point, one of the vehicles near him ran over an improvised explosive device.  AR 408.  Plaintiff acknowledged that he "d[id] not have any combat action[] report[s] at the time of [his] deployment" and that he "seemed to check out ok[ay]" with the team's combat medic but averred that these injuries started to affect him "later on."  AR 408.  The Army again denied SSG Olive's request, finding his letter presented "no new evidence . . . to show [a] combat related event caused" his TBI-related conditions.  AR 386.

In plaintiff's fourth CRSC request he indicated his injuries were caused by an "instrument of war," AR 615, whereas in the past he marked the combat code "simulating war," *see* AR 438.  He again averred that he was "hit in the head while on patrol" in Afghanistan, and that he developed headaches in Iraq "that [he] believe[s] were due to close proximity to explosions."  AR 615.  In denying this request, the reviewing officer offered the most detailed explanation yet:

> On your [CRSC application], you state that your TBI resulted from being hit in the head while on patrol.  However, you provided no facts that you were engaged with a hostile enemy when this incident occurred[,] and you were not issued a Combat Action Badge.  After a review of your medical history in the Armed Forces Health Longitudinal Technology Application, I did not find notes referencing a combat related incident for the above conditions.  While you were diagnosed with headache syndrome in 2006, you did not state a connection to a combat related event. . . .  In May 2010 you denied trauma or exposure to IED blasts for complaints of your headaches and your TBI screening in February 2011 was negative.  Therefore, I found no evidence of a combat related event to support awarding CRSC for your conditions. . . .  After a thorough review of your provided documentation and available military records, we were unable to find any substantiating evidence . . . linking the cause of your claimed conditions to a qualifying combat related disability . . . for CRSC entitlement.  Unfortunately, an

uncorroborated statement in a record that a disability is combat related will not, in and of itself, be considered determinative for purposes of meeting the combat related standards for CRSC benefits.

AR 384-85.

Undeterred and represented by counsel for the first time, plaintiff submitted a fifth CRSC request on March 4, 2020.  Pl.'s Cross-Mot. Mem. at 5; AR 309.  He supplemented his application with a personal statement, a 2008 sworn statement from Captain Reginal Remley, and medical records from 2011 forward.  *See* AR 310-83.  Captain Remley's statement, made on September 10, 2008, described an ambush in which an armored vehicle in Hardcore #51 patrol was hit by a mortar.  AR 359.  Captain Remley was initially concerned that "many soldiers could have been injured" by the mortar blast because they "did not have force protection up," but he stated that "no one was injured from the mortar blast."  AR 359.  Captain Remley does not mention SSG Olive by name.  *See id.*  In his statement, SSG Olive describes the same incident, averring he was "a member of the Hardcore #51 Patrol Team."  AR 320-21.

On April 13, 2020, the Army granted plaintiff's request for CRSC for anxiety with TBI, explaining its decision only by stating that "[w]e . . . have approved your claim in accordance with current program guidance."  AR 209-10.  Because this decision did not mention plaintiff's claim for his TBI-related migraine condition, he requested clarification on July 23, 2020, and again on January 25, 2021.  AR 304-07.  The Army responded on February 25, 2021, denying his request because "[d]ocumentation does not show accident or incident to connect [his TBI-related migraine] disability to a combat related event."  *See* AR 265-66.

In his sixth CRSC request, plaintiff submitted no new documentation.  *See* AR 134.  In its decision denying this request, the Army explained "[t]here were no military medical documents in your claim that confirm your conditions were directly caused by a specific combat-related event" and that personal statements are not admissible evidence under CRSC guidelines.  AR 111.  The decision also indicated that, to request reconsideration, plaintiff would have to provide "[m]edical documentation . . . from the time the injury occurred" that "clearly show[s] a combat related event."  *Id.*

### D.  Instant proceedings

Plaintiff initiated this action on April 12, 2022.  Compl., ECF No. 1.  The government then requested a voluntary remand to reconsider SSG Olive's claim for relief.  Def.'s Unopposed Mot. for Voluntary Remand and Stay, ECF No. 5.  The court granted the government's motion.  Order of June 14, 2022, ECF No. 6.

On remand, the Army determined that SSG Olive's left maxillary sinusitis was combat-related but again denied his request to be awarded CRSC for his TBI-related migraine condition.  AR 1-2.  It concluded "no new medical evidence [was] provided to show [a] combat related event caused [the] condition."  AR 2.  First it compared the VA's assessment of his anxiety with TBI and TBI-related migraine conditions.  AR 2.  The VA rated his unspecified anxiety disorder and his TBI together because they have "overlapping symptoms" and so "it is not possible to

6

differentiate the symptoms from each diagnosis." AR 2.  In contrast, his "migraine headache condition is rated separately, was not found to be secondary to [his anxiety with TBI], and is specifically attributed to [his] TBI." AR 2.

Next, it explained that SSG Olive's personal statement lacked "supporting documentation to confirm [his] TBI was caused by a specific combat-related event." AR 2.  Specifically, the Army reviewed SSG Olive's medical history along with "all documentation" that he submitted with his request, and determined the medical documentation "is based upon . . . personal, uncorroborated statements made years after the events would have occurred and is not based on any treatment record from the time of a combat[-]related event." AR 2-3.  Accordingly, it again advised SSG Olive that if he sought reconsideration he must provide "medical documentation . . . from the time the injury occurred" and that "clearly show[s] a combat[-]related event." AR 3.

Staff Sergeant Olive then filed an amended complaint focusing on alleged errors within the Army's remand decision.  See Am. Compl. ¶¶ 47-49.  Specifically, he identifies three deficiencies.  First, he alleges the Army's decision to award CRSC for his anxiety with TBI but deny CRSC for his migraines "residual to the same TBI" is inconsistent "because both disabilities are associated with the same TBI, which cannot rationally be deemed combat related for one condition and not combat related for the other." Am. Compl. ¶ 47.  Second, SSG Olive maintains the Army's determination that his personal statement is uncorroborated is not supported by substantial evidence because "voluminous medical records" he submitted "provide[] ample evidence" supporting his statement.  Am. Compl. ¶ 48.  Finally, he maintains the Army required him to provide medical evidence contemporaneous with his injury and that this requirement is "arbitrary, capricious, and otherwise not in accordance with law." Am. Compl. ¶ 49.

The parties then briefed these issues in competing motions for judgment on the administrative record.  See Def.'s Mot. for J. on the Administrative R. ("Def.'s Mot."), ECF No. 19; Pl.'s Cross-Mot. for J. on the Administrative R., ECF No. 21; Pl's. Cross-Mot. Mem.; Def.'s Reply in Supp. its Mot. for J. on the Administrative R. and Resp. in Opp'n to Pl.'s Cross-Mot. for J. on the Administrative R. ("Def.'s Reply"); Pl.'s Reply.  These motions are ready for disposition.

## STANDARDS FOR DECISION

"[T]he specific law to be applied" in the case at hand determines which standard of review governs a motion for judgment on the administrative record.  Rules of the Court of Federal Claims, Rule 52.1 Rules Committee Note, 2006 Adoption.  This court will disturb the decision of a military board only if it is "arbitrary, capricious, contrary to law, or unsupported by substantial evidence." Barnick v. United States, 591 F.3d 1372, 1377 (Fed. Cir. 2010).  A decision that, in view of the entire record, is "reasonable and supported by substantial evidence" will not be overturned.  Ford v. United States, 150 Fed. Cl. 220, 224 (2020).  A board's decision will likewise be upheld if it reflects a "rational connection between the facts found and the choice made." See Burlington Truck Lines Inc. v. United States, 371 U.S. 156, 168 (1962).  In contrast, a decision is arbitrary or capricious if it "entirely failed to consider an important aspect of the problem," offers "an explanation . . . that runs counter to the evidence," or is "so

7

implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Accordingly, "when reasonable minds could reach differing conclusions on the same evidence" this court "cannot substitute [its] judgment for that of the military departments." *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983).

## ANALYSIS

Staff Sergeant Olive's claim involves three interconnected compensation schemes: Department of Defense ("DOD") retirement pay, VA disability compensation, and CRSC. First, SSG Olive is entitled to retirement pay as a medical retiree. AR 107. He is an eligible servicemember deemed "unfit to perform the duties" of his office "because of a physical disability incurred while entitled to basic pay." *See* 10 U.S.C. § 1201.[7]

Second, plaintiff is entitled to VA disability compensation. AR 51-54. He was "discharged or released under conditions other than dishonorable" for a service-connected disability — a disability "resulting from personal injury suffered or disease contracted in line of duty . . . during a period of war," and not from any "willful misconduct or abuse of alcohol or drugs." 38 U.S.C. § 1110; 38 U.S.C. § 101(16) ("The term 'service-connected' means . . . that such disability was incurred or aggravated . . . in line of duty in the active military.").

### *A. Applicable regulations*

This case concerns the interaction of these two programs and the CRSC that plaintiff seeks. *See* Am. Compl. ¶ 36; AR 1-3. Before Congress established the CRSC program, all servicemembers who were eligible for both retirement payments and VA disability compensation were subject to the bar on concurrent receipt. *See* Kristy N. Kamarck & Mainon A. Schwartz, Cong. Rsch. Serv., R40589, *Concurrent Receipt of Military Retired Pay and Veteran Disability* at 1 (2020) [hereinafter "CRS Report"]. This bar prevents servicemembers from "simultaneously receiving two types of federal monetary benefits: military retired pay from the [DOD] and disability compensation from the [VA]." *Id.* Under the rule, servicemembers "waive a portion of their retired pay equal to the amount of VA disability compensation." *See id.* at 1.

Initially established in 2003 and expanded in 2008 to include servicemembers who were medically retired, CRSC serves as a supplemental payment that functionally nullifies the bar on concurrent receipt.[8] It provides eligible servicemembers with eligible disabilities "a cash benefit

---

[7] Medical retirement payments are determined by the servicemember's monthly base pay at separation and his combined disability rating, *i.e.*, the sum of the DOD-assigned percentage for each qualifying condition. *See* 10 U.S.C. § 1401.

[8] For example, under the bar on concurrent receipt, a retiree entitled to $1,500 in retired pay and $1,000 in VA disability pay would waive $1,000 in retired pay and receive the remaining $500 as well as $1,000 in disability pay. If, however, the Army determines that same (cont.)

financially identical to what concurrent receipt would provide" and is generally "equal to the amount of VA disability compensation that has been determined to be combat related."  CRS Report at 1, 5.  A servicemember who receives retired pay and has waived VA disability pay pursuant to the bar on concurrent receipt is eligible for CRSC for disabilities that are combat-related.  *Id.* at 1, 6.

Staff Sergeant Olive receives retirement pay.  *See* AR 336-37.  He waived the required portion of his VA compensation, *see* AR 127, and the VA rated his TBI-related migraine condition as 30% disabling, AR 396.  The only issue here is whether the Army erred in finding this condition is not combat-related and denying his CRSC request on that basis.  Am. Compl. ¶¶ 46-49.

A disability can be service-connected and eligible for VA disability and DOD medical retirement pay without being combat-related for the purposes of special compensation.  A servicemember must prove by a preponderance of evidence that a disability is combat-related. AR 71.[9]  As relevant to SSG Olive's claim, an injury incurred "as a direct result of armed conflict" or "through an instrumentality of war" is combat-related.  10 U.S.C. § 1413a(e)(2). Under DOD guidance, "armed conflict" includes "war, expedition, occupation[,] . . . battle, skirmish, . . . or any other action in which [s]ervice members are engaged with a hostile or belligerent nation, faction, force or terrorists."  AR 77.  Next, "instrumentality of war includes" any "vehicle, vessel, or device designed primarily for Military Service and intended for use in such Service at the time of the occurrence or injury."  AR 77-78.

The Army makes its determination of combat-relatedness "with respect to each separate disability."  AR 68.  Ordinarily, a servicemember must establish a "definite" or "direct" causal relationship between the injury and the armed conflict or instrumentality of war, respectively. AR 77-78.  The VA presumes certain "secondary conditions," are service-connected if they are "proximately due to or the result of a service-connected disease or injury."  38 C.F.R. § 3.310(a). For certain injuries, if the VA indicates it applied a presumption in finding the injury is service-connected, the Army must likewise presume that injury is combat-related.  *See* AR 68.

---

retiree is entitled to CRSC for half of the injuries reflected in the $1,000 in VA disability pay, the retiree would receive $2,000 instead — $500 in CRSC plus $500 in retirement pay and $1,000 in VA disability pay.  Because CRSC is assessed and disbursed after the servicemember waives the required amount of their VA benefits, it does not prevent the operation of the bar on concurrent receipt.  CRS Report at 5.

[9] The administrative record contains the Department of Defense CRSC guidelines at AR 63-78, Dep't of Defense, *Combat-Related Special Compensation (CRSC) Section 1413a, Title 10, United States Code, As Amended Revised Program Guidance January 2004*, available at https://militarypay.defense.gov/Portals/3/Documents/CRSC_Guidance_104.pdf.  When referencing these guidelines, the court cites to the Administrative Record.

Here, the VA does not indicate it applied any such presumption to either plaintiff's TBI-related migraine condition or his anxiety with TBI condition.  *See* AR 40-43, 48.

### B.  Substantial evidence supports the Army's finding that plaintiff's TBI-related migraine condition is not combat-related

The parties contest whether the Army adhered to DOD guidance in denying plaintiff's most recent request for special compensation.  Under this guidance, the Army must review and weigh all "available documentary information" and determine whether the servicemember proved their disability is combat-related by a preponderance of the evidence.  AR 71.  This determination must be based on "credible, objective documentary information in the records as distinguished from personal opinion, speculation, or conjecture."  AR 71.

The government maintains that SSG Olive has not carried his burden of proof.  Specifically, it contends his personal statement does not establish his disability was combat-related because it is uncorroborated and even undercut by the record.  Def.'s Mot. at 2, 21.  Neither the two service awards upon which SSG Olive relies, Captain Remley's statement, nor SSG Olive's own statements indicate his injury was combat-related.  *Id.* at 21.  Likewise, the 2011 medical records — notes from his visit for a shoulder injury in March, the September TBI clinic examination, and two December medical evaluation board reports — provide little independent support for his claims because they were issued six years later and "merely recount" without validating SSG Olive's recollection of events.  *Id.* at 22.  The government also argues that SSG Olive's failure to mention the mortar attack during any of these examinations is inconsistent with his recent statements supporting his CRSC application.  *Id.* at 24.

Aside from arguing the Army's CRSC award for anxiety with TBI entails awarding CRSC for his TBI-related migraine condition, Pl.'s Cross-Mot. Mem. at 17-18, addressed *infra*, at 12-13, plaintiff contends that his failure to report his injuries earlier does not amount to an inconsistency.  *Id.* at 18-19.  Instead, it reflects the "reality that many injuries — particularly those in issue here — may not seem significant enough to require treatment until much later."  *Id.* at 19.

Staff Sergeant Olive's failure to contemporaneously report migraines does not contradict his allegations that certain combat-related events caused his migraine condition.  The salient question becomes whether plaintiff's proof provides the Army an adequate basis for determining that he has or has not established that his migraine condition is combat-related.

All the events plaintiff alleges caused his migraine condition occurred before April 27, 2005, when he returned from his first tour of duty in Afghanistan.  *See* AR 15, 408; Am. Compl. ¶¶ 22-23.  The two service awards represent some of the oldest evidence in this case, and neither supports his claim to have been injured during combat.  *See* AR 80-81 (recognizing his "performance and dedication to duty were critical to the success of combat operations" and authorizing him to wear a shoulder insignia recognizing his service).

Next, the earliest medical records plaintiff relies upon were recorded in 2011, nearly six years after he returned from Afghanistan.  Even within these documents, SSG Olive's statements

provide the only causal connection between his symptoms and the precipitating events. Records from the March 2011 doctor's visit indicate plaintiff "said he worked on a gun truck" and "experienced mortar attacks" but draw no conclusion regarding whether he suffers from TBI. AR 350. While the September TBI clinic notes report that SSG Olive "state[d]" that he "experienced being rattled around in the truck, bouncing his head off the walls, interior a variety of times" while in Afghanistan, the TBI clinician takes no position regarding the cause of plaintiff's TBI symptoms. AR 347.

The two December 2011 medical evaluation board assessments likewise rely solely on SSG Olive's recollection, reciting that "[h]e reports he sustained many head injury(ies) during service," AR 93, and that he "reports that during deployment in Afghanistan in 2004 . . . [he] kept getting bounced around in his kevlar, hitting his head against the sides of the truck and getting thrown through the windshield on patrol." AR 20. While one doctor concludes plaintiff's migraine headaches are service related, this determination relies solely on SSG Olive's statements during a visit, and the doctor did not conclude the injury was caused by a combat event. AR 93, 104. As late as March 2011, when he returned from his third and final tour, SSG Olive denied he had suffered any head injuries. AR 351. Moreover, within these records SSG Olive attests his symptoms were mild at the time of the injury. AR 367. Elsewhere he denies experiencing any symptoms immediately following the events. AR 347. Nor does Captain Remley's statement provide the missing causal link. Although Captain Remley's statement confirms a mortar attack occurred and, when combined with SSG Olive's statement, that plaintiff was present, Captain Remley also says "no one was injured from the mortar blast." AR 359.

Accordingly, the Army reasonably determined this medical documentation was based on "personal, uncorroborated statements made years after the events would have occurred." AR 2-3. The Army did not ignore the evidence upon which SSG Olive relied, and its determination that plaintiff failed to provide a causal link between his TBI and a combat-related event is supported by substantial evidence.

### C.  *The Army's statement regarding contemporaneous medical evidence*

The parties also dispute whether the Army erred by requiring SSG Olive to submit medical evidence from the time of his injury. The parties' arguments center on two statements in the remand decision. First, that the Army had reviewed SSG Olive's personal statement alongside "all documentation provided with [his] claim and [his] medical history;" and second, that, "[t]o reconsider [his] migraine condition, [he] must provide this office with military medical documentation . . . from the time the injury occurred." AR 2-3.

The government contends the Army's first statement demonstrates that it applied the correct standard and that its second statement concerning contemporaneous evidence was guidance for any future reconsideration requests. Def.'s Mot. at 3. Plaintiff responds that this "litigation argument is impossible to square" with the second statement's "unequivocal direction" that SSG Olive must provide medical evidence contemporaneous with his injury. Pl.'s Cross-Mot. Mem. at 12-13.

Considering this case's procedural history, the Army's second statement constitutes guidance regarding future reconsideration requests and not a standard it applied on remand. Plaintiff has asked the Army for CRSC for his migraine condition on six separate occasions and been denied each time. The Army has reviewed the 2011 medical records each time and has considered Captain Remley's statement at least twice. Neither the factual evidence before the Army nor its assessment of this evidence with respect to SSG Olive's migraine condition has changed. Most recently, the Army reviewed all the evidence before it and denied plaintiff's CRSC request because his uncorroborated personal statements along with the medical records he submitted were insufficient to show that his migraine condition is combat-related. AR 2. This shows the Army followed applicable guidance, and the statement that he "must" obtain contemporaneous medical evidence is a recommendation for how to bolster future submissions. Therefore, the Army did not apply a standard requiring contemporaneous medical evidence and did not act contrary to law.

### D.   The Army did not err in granting plaintiff CRSC for his anxiety with TBI condition but denying CRSC for his TBI-related migraine condition

Finally, the parties contest whether the Army erred by denying plaintiff CRSC benefits for his TBI-related migraine condition considering its decision to award him special compensation for anxiety with TBI. Specifically, the parties disagree about whether the remand decision adequately addressed this apparent contradiction.

Plaintiff contends that because the Army found that the evidence he submitted established that his anxiety with TBI was combat-related, it "could not rationally have concluded that the same evidence was insufficient to show that his [m]igraines [r]esidual to the same TBI were not combat related." Pl.'s Cross-Mot. Mem. at 2. The Army did not state what combat-related event it found caused SSG Olive's anxiety, and the only records it relies upon in its remand decision are the VA rating establishing his "TBI is associated with both his Anxiety and his Migraines Residual to TBI." *Id.* at 13-14. Indeed, both the VA and the Army assigned the higher 40% rating for his anxiety with TBI condition rather than the 30% rating the VA attributed to his anxiety. *Id.* at 15-16; *see also* AR 1, 40-43. According to plaintiff, "nothing in the VA's Ratings Decision justifies [the Army's] disparate treatment" of these two conditions. Pl.'s Cross-Mot. Mem. at 15.

The government responds that the Army acted reasonably in awarding plaintiff CRSC for his anxiety with TBI but not for his migraines because "the two conditions were rated separately by the VA, and his migraine headaches were *not* identified as an overlapping symptom of his anxiety disorder." Def.'s Mot. at 3. Moreover, the government contests three assumptions underlying SSG Olive's argument: (1) that the Army "determined that his 'TBI' condition was combat related;" (2) that his migraine condition and his anxiety condition were both caused by TBI; and (3) that the two conditions were caused by the same events. Def.'s Reply at 7-9. Because the conditions are separate, the determination that plaintiff's anxiety with TBI was combat-related does not necessarily entail that his migraines are combat-related.

Here, SSG Olive apparently argues that his migraine condition should be presumed to be combat-related because his anxiety with TBI was found to be combat-related. The law provides

no such presumption, and the record supports the Army's decision to assess the two conditions separately.  As explained in the remand decision, the VA did *not* deem that plaintiff's migraines were an "overlapping symptom[]" of his anxiety with TBI.  *See* AR 2.  Instead, his migraine condition was "rated separately, was not found to be secondary," and is attributed to his TBI. AR 2.  Although the Army found his anxiety with TBI is combat-related, it never found his TBI alone is combat-related.  *See* AR 2, 300.  Nor does the Army's finding that either his TBI or his anxiety was combat-related logically entail that his TBI was combat-related.  The Army's reasoning therefore contains no contradiction.  The remand decision adequately explains why, considering the whole record, the Army concluded that neither the VA's determination that both conditions are service connected nor the Army's own finding that his anxiety condition is combat-related provided sufficient evidence to establish his TBI-related migraine condition is combat-related.

The government explains why the Army's remand decision does not necessarily contradict its determination that plaintiff's anxiety condition was combat-related.  For instance, if the Army determined plaintiff's anxiety with TBI was caused by the mortar attack it could still reasonably find his migraines were not because there is insufficient evidence that he was physically injured in the attack.  Put differently, the Army could find that plaintiff's anxiety with TBI condition is combat-related based on his statement that he "feared for [his] life," AR 148, while finding plaintiff's medical records, plaintiff's statements, and Captain Remley's statements failed to establish that this event caused his TBI-related migraines.  Thus, the Army can consistently conclude that the record supports finding the event that caused his anxiety condition did not cause his migraine condition.

Plaintiff challenges the government's explication of the Army's remand decision as an impermissible *post-hoc* rationalization.  Pl.'s Cross-Mot. Mem. at 15.  The Army's rationale for denying plaintiff CRSC for migraines is sufficient, however, without this reasoning.  The Army determines combat-relatedness with respect to each disability separately, and as discussed, the agency sufficiently defended its assessment of the record evidence and decision not to award CRSC for migraines.  It reasonably concluded SSG Olive's personal statement was uncorroborated by the documentation he provided.

Accordingly, plaintiff's argument fails.  Finding that his anxiety with TBI condition is combat-related does not entail finding that his TBI-related migraine condition is as well.  The Army did not err in finding plaintiff's TBI-related migraine condition is not combat-related.

## CONCLUSION

Accordingly, the government's motion for judgment on the administrative record is GRANTED and the plaintiff's motion for judgment on the administrative record is DENIED.

The Clerk of Court is directed to enter judgment in favor of defendant.

No costs.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Senior Judge